# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DONNELL FELDER,

               Petitioner,

     v.

WARDEN P. COPENHAVER,

               Respondent.

Case No. 1:12-cv-01081-BAM  HC

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  He contends that United States Parole Commission (1) violated his due process rights by miscalculating his grid score, and (2) applied the District of Columbia's 2000 parole guidelines instead of its 1987 guidelines, violating the ex post facto clause.

## I.     Background

### A.     The Underlying Convictions and Sentences

On January 2, 1986, while Petitioner and two co-defendants attempted to steal cocaine, their victim was shot in the back.  A witness identified co-defendant Myles as having provided a gun to Petitioner, who shot the victim. Petitioner maintains that he was twenty feet away from the victim and did not shoot him.  Petitioner was arrested January 17, 1986, and remained in custody until he was released on bond on or about September 1, 1986.

///

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

On December 14, 1986, Petitioner was arrested on charges of drug possession and distribution after he sold two foil containers of PCP to an undercover officer.  In a search incident to arrest, Petitioner was found to possess four additional packets of PCP.  Petitioner later explained to the parole examiner that having recently been released on bond, he was "in the Christmas spirit."  Doc. 16-1 at 9.

On September 29, 1987, the Superior Court of the District of Columbia convicted Petitioner of distribution of PCP, distribution of marijuana, unlawful possession with intent to distribute PCP, and unlawful possession with intent to distribute marijuana, all crimes committed on December 14, 1986, while Petitioner was free on bond for another pending offense.  Petitioner was ultimately sentenced to term of imprisonment from 40 months to twelve years.

On November 29, 1989, the D.C. Superior Court convicted petitioner of felony murder while armed as a result of the January 2, 1986 shooting.  The court sentenced Petitioner to a term of twenty years to life imprisonment.

**B.**       **Initial Parole Hearing**

On November 17, 2009, while Petitioner was confined at USP Pollack in Louisiana, the U.S. Parole Commission conducted Petitioner's initial parole hearing using the 1987 D.C. Board of Parole Guidelines.  Petitioner did not contest that he had four felony convictions in addition to the convictions detailed above.

**1.**       **Prison Escape**

On August 25, 1992, Petitioner and a fellow inmate escaped from LaSalle County Jail in Cotulla, Texas.  They jammed a lock, escaped through the administration building, stole a sheriff's van, and drove away.  The van was recovered in San Antonio, Texas.  Petitioner remained at large until December 14, 1992, when he was arrested in Washington, D.C.  Petitioner was convicted of escape and sentenced to a 24-month term of imprisonment to be served consecutively to his current term.  Petitioner explained to the parole examiner that the prison door was open, and they simply walked away.

///

///

1

### 2.   Disciplinary Decisions

2    On July 31, 2002, Petitioner cursed at staff when they locked up his cellmate, refused to

3 identify his property, and tried to incite other inmates to anger.  An August 6, 2002 disciplinary

4 decision found that he had violated Codes 307 (Refusing an Order) and 312 (Insolence).

5    On February 17, 2005, Petitioner was discovered to be hiding six packets of marijuana in

6 his waistband.  Petitioner admitted the charge but contended that he was simply holding the

7 marijuana for another inmate.  A March 15, 2005, disciplinary decision found that Petitioner had

8 violated Code 113 (Possessing Drugs).

9    On September 5, 2009, during a prison lockdown, Petitioner yelled obscenities at staff and

10 engaged in a contentious discussion regarding cleaning supplies.  "When warned about the tone of

11 his voice, [Petitioner] stated, "I don't give a fuck about a shot for my language."  Doc. 16-1 at 10.

12 A disciplinary decision dated September 23, 2009, concluded that Petitioner had violated Codes

13 307 (Refusing an Order) and 404 (Using Abusive or Obscene Language).

14

### 3.   Prior Convictions

15    On August 16, 1983, Petitioner was charged with possession of a prohibited weapon

16 (wrench).  On November 15, 1983, he was sentenced to one year probation under the Federal Youth

17 Corrections Agency.

18    On December 30, 1984, Petitioner was charged with attempted unauthorized use of a

19 vehicle.  He was sentenced to thirty days' work release on April 30, 1985.

20    On January 17, 1985, Petitioner was charged with theft.  On September 24, 1985, he was

21 sentenced to three years' probation.

22    On November 4, 1985, Petitioner was charged with attempted unauthorized use of a vehicle.

23 On February 7, 1986, he was sentenced to 180 days' imprisonment.

24

### 4.   Social and Educational Programming

25    At USP Pollack in January 2009, Petitioner enrolled in a psychology-based program called

26 the Challenge Program.  Petitioner had completed ten educational programs while incarcerated,

27 including numerous hours preparing to take the GED exam.  In 2005, Petitioner became frustrated

28 ///

and discontinued working toward his GED, but with the help of a prison teacher, he had recently re-enrolled in the program.

Petitioner received a head injury when assaulted by another inmate at USP Lewisburg. He continued to suffer headaches and feelings of paranoia. Participation in the Challenge Program had helped Petitioner rebuild his confidence.

A point was deducted from Petitioner's guidelines score for sustained program achievement.

### 5. Parole Determination

The salient factor score (degree of risk) was 2. Risk points are determined by type of the risk associated with the inmate's convictions. Petitioner was assigned one point based on the violent nature and use of a weapon in committing the offense for which he was sentenced and one point for the relation of the offense to felony drug trafficking.

Petitioner was assigned a point for institutional adjustment, based on his escape and three prior disciplinary infractions.

A point was deducted for Petitioner's participation in the Challenge Programs and GED classes.

Using this information, the parole examiner assigned a point assessment grid score of 3 (+2 degree of risk points +1 type of risk points +1 negative institutional behavior points -1 program achievement point = 3). The examiner summarized:

> [Petitioner] now age 45 is appearing for his Initial Parole Hearing on a life term imposed in 1989. Additionally, he has a separate drug conviction that he sustained while out on Bond. Finally, he has an escape conviction for a 1992 incident while he was housed in a County Jail in Texas. That resulted in a 24 month consecutive sentence. The subject's initial point score is 3 which indicates parole should not be granted at the Initial Hearing. The examiner finds no basis to render a decision outside the guidelines. Additionally, this examiner believes that a Rehearing in 12 months is appropriate for this case. It is noted that he will have completed the Challenge Program by that time and another assessment of his conduct can be obtained.

Doc. 16-1 at 11.

///

4

The Parole Commission denied parole on February 4, 2010. It continued the matter to November 2010, after service of twelve months from the initial hearing date. On October 26, 2010, the Parole Commission continued the rehearing to August 2011, because Petitioner had not served the minimum term of his sentence at the time of the initial parole hearing.

### C.    Reconsideration Parole Hearing

On August 15, 2011, while Petitioner was confined at Atwater USP in California, the U.S. Parole Commission conducted a second parole hearing using the 1987 D.C. Board of Parole Guidelines. Petitioner claimed full responsibility for his actions and expressed remorse for the victim's death. Petitioner still maintained, however, that he was 20 feet away from the victim and did not fire the gun that killed the victim.

### 1.    Disciplinary Decisions

Since the Initial Parole Hearing, Petitioner incurred an additional disciplinary infraction for blackmailing staff (Code 204) at USP Pollack. Petitioner wrote a series of notes to his counselor requesting protection in return for money to be paid later. Petitioner's handwriting was identified by comparison to known samples. Petitioner denied the infraction. In a decision dated June 29, 2010, the hearing examiner concluded that Petitioner violated institutional rules. Petitioner was confined in segregation for several months thereafter. The parole examiner added a point to Petitioner's grid score for this infraction.

### 2.    Challenge Program

After the decision that Petitioner violated institutional rules by blackmailing his counselor, he was expelled from the Challenge Program at USP Pollack. He continued to take continuing education classes while confined in segregation.

Following Petitioner's transfer to Atwater USP, he was readmitted to the Challenge Program. He completed three continuing education programs: U.S. History, Latin Culture Release

Program, and Algebra Programming.  "He also has continued to try to obtain his GED and states

that he has completed the necessary hours and will be taking the test again soon."  Doc. 16-1 at 25.

A point was deducted from Petitioner's guidelines score for sustained program achievement.

### 3.    Parole Determination

Petitioner's prior grid score was 3.  A point was added for his disciplinary infraction, and a

point was subtracted for sustained program achievement, yielding a current grid score of 3.  The

examiner, who recommended that the Commission deny parole, summarized:

> [Petitioner], currently age 47, is applying for a rehearing on a life term for Felony
> Murder while Armed and Drug Charges that were committed separately.  The
> subject has a parolable grid score of 3.  However, this examiner believes he does
> need to complete additional programs before receiving a parole decision.  It is
> noted that the Challenge Program is an excellent program if he was expelled from
> that program as a result of disciplinary infractions he committed at Pollack.  The
> subject vehemently denied committing the disciplinary infractions but it is noted
> he was found guilty and this examiner's review of the similarities in the
> handwriting appeared to support the DHO decision.  This examiner believes a set
> off of 24 months will allow for full completion of the Challenge program
> including any aftercare program.  He also needs to experience a time of infraction
> free incarceration before the Commission should seriously consider releasing him
> on parole.

Doc. 16-1 at 26.

The examiner also explained why the recommendation departed from the guidelines:

> A departure from the parole release and rehearing guidelines is found warranted at
> this time because the Commission finds there is a reasonable probability you
> would not obey the law if release[d] and your release would endanger public
> safety.  You are a more serious parole risk than indicated by your point score
> because you have not successfully completed the Challenge Program at this point.
> In fact, you sustained a disciplinary infraction where you were found to have
> engaged in attempted blackmail of staff while you were enrolled in the Challenge
> Program.  The Commission finds that you need to complete both the Challenge
> Program and your GED prior to the next hearing as well as remaining free of any
> new infractions between now and your next parole hearing.

Doc. 16-1 at 26.

On September 22, 2011, the Parole Commission denied parole and continued for

reconsideration in August 2013 after 24-months' additional service.

**D.    Federal Habeas Petition**

Petitioner filed a federal petition for writ of habeas corpus on July 5, 2012.  The parties do not dispute venue or service.

**II.    Standard of Review**

A federal district court may grant habeas relief if a federal prisoner can establish that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004), *overruled on other grounds*, *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010).  Section 2241 generally provides the proper method for reviewing the decisions of the U.S. Parole Commission.  *Benny v. United States Parole Comm'n*, 295 F.3d 977, 988 (9th Cir. 2002).

A district court's review of a Parole Commission determination is "exceedingly narrow."  *Walker v. United States*, 816 F.2d 1313, 1316 (9th Cir. 1987).  *See also Horner v. United States Parole Comm'n*, 870 F.2d 1489, 1490 (9th Cir. 1989).  Review of parole decision is limited to determining whether the Parole Commission acted within its statutory authority or committed a constitutional violation.  *Vargas v. United States Parole Comm'n*, 865 F.2d 191, 193 (9th Cir. 1988).  The Court may not second-guess the Parole Board's exercise of its judgment among the range of possible choices and options.  *Id.*; *Wallace v. Christensen*, 802 F.2d 1539, 1552 (9th Cir. 1986) (*en banc*).  "[T]he USPC has full authority to grant, deny, or revoke a District of Columbia offender's parole and to impose or modify conditions upon an order of parole."  *Brown v. U.S. Parole Comm'n*, 713 F.Supp. 11, 13 (D.D.C. 2010).  The Parole Commission is not restricted to making decisions strictly within the applicable guidelines and may go outside the guidelines for good cause.  *Rifai v. U.S. Parole Comm'n*, 586 F.2d 695, 699 (9th Cir. 1978).

///

///

### III.   Due Process Violation

Petitioner contends that the Parole Commission violated his Due Process rights under the Fifth Amendment to the U.S. Constitution when it made the erroneous determinations: (1) that Petitioner had five felonies; (2) that Petitioner had two prior commitments greater than 30 days; (3) that the scheduled parole review required a twelve-month set off to reach Petitioner's mandatory minimum period of incarceration; (4) that Petitioner did not complete the Challenge Program; and (5) that Petitioner needed to complete his GED.

#### A.   Analysis of Individual Factors in Parole Analysis

The Court may not review judgments integral to individual parole decisions, such as the nature and circumstances of the underlying offense. *Roberts v. Corrothers*, 812 F.2d 1173, 1176 (9th Cir. 1987). The Commission's "judgments involving a broad range of factors that the Commission takes into account in arriving at its decision are committed to the Commission's discretion and are unreviewable even for abuse of discretion." *Benny*, 295 F.3d at 982 (quoting *Wallace*, 802 F.2d at 1551) (internal quotation marks omitted). As the regulations state:

> The granting of parole to an eligible prisoner rests in the discretion of the U.S. Parole Commission. As prerequisites to a grant of parole, the Commission must determine that the prisoner has substantially observed the rules of the institution or institutions in which he has been confined, and upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, must determine that release would not depreciate the seriousness of the offense or promote disrespect for the law, and that release would not jeopardize the public welfare (i.e., that there is a reasonable probability that, if released, the prisoner would live and remain at liberty without violating the law or the conditions of his parole).

28 C.F.R. § 2.18.

According to Petitioner, he (1) had two felonies and (2) no prior commitments greater than 30 days; (3) need not have completed the Challenge Program to satisfy the 1987 guidelines; (4) had been exempted from educational requirements following his traumatic brain injury; and (5) had fully served the mandatory minimum twenty-year term for murder and 40 months for the drug charges as of August 27, 2011. Despite Petitioner's many objections to the specific findings

///

comprising the Parole Commission's analysis, under the applicable standard of review, a habeas Court may not reweigh the evidence relating to individual factors.

Even if the Court were to address Petitioner's arguments, the outcome of Petitioner's parole hearings would not change. First, the calculation required by the 1987 Guidelines does not consider prior felonies, as Petitioner asserts, but bases its calculation on "[p]rior convictions and adjudications." 1987 D.C. Parole Guidelines, R. 204.4(a). In addition, Petitioner did not contest his four prior convictions at the parole hearing. Contrary to petitioner's contentions, the parole assessment accurately reflected that Petitioner had no prior commitments of more than 30 days. *See* Doc. 16-1 at 14 and 17.

Although the Parole Board encouraged Petitioner to complete the Challenge Program and his GED, he was given credit at both hearings for his participation in the Challenge Program and continuing education programs. In both calculations, a point was deducted from his risk score for sustained program achievement, which considered Petitioner's participation in the Challenge Program and educational programs such as the GED classes.

In claiming that he was permanently exempted from educational programs, Petitioner overstates his case. After noting that Petitioner was working at or above his potential, the educational summary included in the record acknowledged Petitioner's traumatic brain injury and stated, "The [traumatic brain injury] impedes [Petitioner's] learning process and he may not benefit from the literacy program. [Petitioner] *can be permanently exempted* from the education program. At this time he does not require any accommodations or other modifications for GED testing." Doc. 16-1 at 36 (emphasis added). Nothing in the record supports a conclusion that Petitioner ever sought exemption from the education program. To the contrary, at the 2009 hearing, Petitioner himself stated that he had recently re-enrolled in the GED program following encouragement by a teacher. He was still participating in the GED program in August 2011.

Finally, Petitioner complains that, although the 2009 hearing summary provided for a rehearing in twelve months (November 2010) (a twelve-month set-off), on October 26, 2010, the Parole Commission amended the order to provide for rehearing in August 2011 without justification or guideline compliance. The Commission explained that Petitioner had not reached

his parole eligibility date when his initial parole hearing was held in November 2009 and therefore,
he was not entitled to a rehearing until twelve months after his parole eligibility date of August 2,
2010.  "[A]n inmate has no right to a twelve-month set-off, and adherence to the twelve-month
timeline is not mandatory."  *Smith v. McGrew*, 2013 WL 6002904 at * 7 (C.D.Cal. Nov. 6, 2013).
In its discretion, the Parole Commission may set any parole reconsideration date it determines to be
appropriate.  *Blair-Bey v. Quick*, 151 F.3d 1036, 1038 (D.C. Cir. 1998); *Hall v. Henderson*, 672
A.2d 1047, 1052 (D.C. 1996).

## B.    Due Process in Parole Determination

The Fifth Amendment prohibits the government from taking an individual's life, liberty, or
property without due process of law. The Fifth Amendment does not create a liberty interest in
parole, although an independent source, such as state law, may create such an interest.  *See
Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979).  The
District of Columbia's parole statute, which applies in this case, does not create a protected liberty
interest in a convicted person's conditional release before the completion of his sentence.  *Board of
Pardons v. Allen*, 482 U.S. 369, 373-76 (1987); *Ellis v. District of Columbia*, 84 F.3d 1413, 1420
(D.C.Cir. 1996); *Price v. Barry*, 53 F.3d 369, 370 (D.C. Cir. 1995); *Brandon v. District of
Columbia Board of Parole*, 823 F.2d 644, 648 (D.C.Cir. 1987).  "The District of Columbia's parole
statute does not contain mandatory language creating an expectancy of release that rises to the level
of a constitutionally protected liberty interest.  Indeed, the law is well established that the D.C.
statutory scheme does not create a liberty interest in parole."  *Thompson v. Veach*, 501 F.3d 832,
836-37 (7th Cir. 2007).

Due process in a parole hearing requires nothing more than "an opportunity to be heard and
notification of the Board's reasons for denying parole."  *Bermudez v. Duenas*, 936 F.2d 1064, 1066
(9th Cir. 1991).  Petitioner participated in the November 17, 2009, and August 15, 2011,
conferences, both of which were conducted by videoconference.  In 2009, Petitioner was assisted
by a case manager; in 2011, although Petitioner waived representation, a case manager was
available throughout the proceedings.  At each hearing, Petitioner presented an initial statement
taking full responsibility for the crime and describing his participation as well as responding to the

1   summaries of disciplinary infractions and participating in the discussions of his program

2   achievements.  Hearing examiner Lynne E. Jenkins provided a written summary of each hearing.

3         Accordingly, Petitioner had an opportunity to be heard and the reasons for the Commission's

4   decision.  Due process required nothing more. Accordingly, Petitioner's due process claim does not

5   merit habeas relief.

6   **IV.    Ex Post Facto Violation**

7         Petitioner contends that the Parole Board's application of the District of Columbia's 2000

8   parole guidelines rather that the 1987 parole guidelines damaged Petitioner by adding months to his

9   minimum parole eligibility over the minimum sentence and resulted in an ex post facto violation.

10  This claim is factually inaccurate.

11        The Ex Post Facto Clause of the United States Constitution prohibits "enactments which, by

12  retroactive application, increase the punishment for a crime after its commission."  *Garner v. Jones*,

13  529 U.S. 244, 249 (2000).  A retroactively applied parole regulation or guideline violates the Ex

14  Post Facto Clause if it creates a significant risk of a longer period of incarceration than under the

15  earlier rule.  *Id.* at 255.

16        Both the November 17, 2009, determination and the August 15, 2011, determinations

17  explicitly state that they were scored under the 1987 guidelines of the D.C. Board of Parole.  *See*

18  Doc. 16-1 at 20 ("The Commission has applied the D.C. Board of Parole's 1987 Guidelines to the

19  initial parole decision in your case.") and 29 ("You continue to be scored under the 1987 guidelines

20  of the D.C. Board of Parole.").  The Court's review of the Parole Commission's decision confirms

21  that the Commission appropriately applied the 1987 guidelines.  Petitioner is not entitled to habeas

22  relief on his ex post facto claim.

23  **V.    Certificate of Appealability**

24        A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district

25  court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v. Cockrell*,

26  537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate

27  of appealability is 28 U.S.C. § 2253, which provides:

28  *///*

                                                    11

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

    (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

    (B)  the final order in a proceeding under section 2255.

(2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, a certificate of appealability may issue only if the petitioner has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his or her part."  *Miller-El*, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial

///

showing of the denial of a constitutional right.  Accordingly, the Court declines to issue a certificate of appealability.

**VI.**     **Conclusion and Order**

Accordingly, the Court hereby ORDERS that:

1.       The petition for writ of habeas corpus is DENIED;

2.       The Clerk of Court is DIRECTED to enter judgment for Respondent; and

3.       The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   __**September 2, 2015**__            _____/s/ *Barbara A. McAuliffe*_____
                                                                    UNITED STATES MAGISTRATE JUDGE

13